UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
7THONLINE, INC.,

                                                    Index No.:

                    Plaintiff,

        v.                                          **COMPLAINT**


COLONY BRANDS, INC.,

                    Defendant.
---------------------------------------------------------X

        Plaintiff 7THONLINE, INC. ("Plaintiff" or"7thonline"), by and through their

attorneys, Kennedys CMK LLP, for their Complaint, hereby alleges as follows against

Defendant COLONY BRANDS, INC. ("Defendant" or "Colony"):

## INTRODUCTION

        1.      This is an action for breach of contract in which 7thonline also seeks a

declaratory judgment, which arises out of Colony's failure to comply with, and concerns the

parties' relationship under, the Application Hosting Agreement-Retail Solution agreement

which was executed between Colony and 7thonline on January 8, 2018 (the "Agreement").[1]

## PARTIES

        2.      Plaintiff is a corporation organized under the laws of the State of Delaware.

7thonline's principal place of business is 70 W. 40th Street, 15th Floor, New York, New York

10018.

        3.      Plaintiff provides and services software systems for certain retail brands.

        4.      Defendant is a corporation organized under the laws of the State of Wisconsin.

Colony's principal place of business is 1112 7th Avenue, Monroe, Wisconsin 53566.

---

[1] *See* Exhibit 1.

5.      Defendant sells products nationwide, both online and via catalogs, including apparel, shoes, home décor, food and gifts, and electronics.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. §1332(a)(1).  This is a dispute between 7thonline, a Delaware corporation with its principal place of business in New York, New York, and Colony, a Wisconsin corporation with its principal place of business in Wisconsin.  The amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interests and costs.

7.      Pursuant to Fed. R. Civ. P. 4(k)(1)(A), this Court has personal jurisdiction over Colony under New York law, specifically CPLR §§301 and 302, as Colony transacts business within the State of New York and entered into the contract which forms the basis of this action with a New York domiciliary, 7thonline.

8.      Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. §1391, because a substantial part of the events or omissions giving rise to this action occurred within this District.

## FACTUAL BACKGROUND

### 7thonline's Business

9.      For over 20 years, 7thonline has created software systems for its retail business clients, including Patagonia, Tommy Hilfiger, Bestseller, Jimmy Jazz, and Michael Kors, which combine breakthrough technology with best business practices.  7thonline prides itself on providing solutions to its clients needs which are down to earth, pragmatic to the core, and easy to use.

10.      To provide these solutions, 7thonline offers a comprehensive suite of applications which are powered by retail specific machine learning and artificial intelligence, and which cater specifically to its clients' needs. These applications include, but are not limited

2

to, a merchandise planning application, an assortment planning application, and an embedded forecasting and reporting application.

11.     7thonline's merchandise financial planning application is critical for retailers in seasonal product categories, where merchandise has a limited shelf life. Without a properly developed merchandise plan in place, retailers could find themselves with stock-outs and/or overstock situations which will lead to reduced margins, lost sales, and markdowns.

12.     7thonline's assortment planning application helps its customers maximize selling potential by reverse engineering clusters: the system goes down to the lowest level -- style/color/size/by location/by week to analyze historical data, to correct for lost sales, and to recommend optimal buys for 7thonline's clients.

13.     7thonline's embedded forecasting and reporting application allows its customers to easily analyze and compare historical sales, in-season performance, system forecasts and user projection on one screen, allowing its customers to gain insights into selling trends with industry-specific forecasting.

**The Agreement**

14.     In 2017, Colony engaged in initial discussions with 7thonline to see whether 7thonline could provide and service a software system tailored to Colony's specifications which would help electronically-manage Colony's inventory, its purchase order needs and sales, and to provide forecasting and planning for Colony's future inventory and sales for its catalog-based products, all while hosting Colony's data related to its catalog-based business.

15.     Following these initial discussions, the parties entered into the Agreement, which was executed on January 1, 2018.  A true and correct copy of the Agreement is annexed to this Complaint as Exhibit A.  Relevant terms and conditions of the Agreement were as follows.

16.    Section 1 of the Agreement set forth the "Services" to be provided by 7thonline to Colony under the Agreement.    7thonline agreed to host Colony's retail merchandise assortment planning information on internet pages accessible through 7thonline's website, permitting access to its services through a password protected gateway to users designated by Colony.

17.    "Services" is further defined in Exhibit A to the Agreement to include: (1) the Provision of Software Services; (2) System Setup and Enhancements; (3) 24/7 Hosting Services; (4) Maintenance and Technical Support; (5) Implementation and Training Services; and (6) Professional Services.    7thonline also granted the Colony a non-exclusive, non-transferable, revocable, limited license to use the services and 7thonline's related software in the U.S. and its territories during the Agreement term.

18.    Section 3 of the Agreement provided its "Term."   The Agreement called for an initial term of three years for the Agreement, commencing January 1, 2018 and ending on December 31, 2020, with automatic renewals for additional one-year terms thereafter, "unless either party gives the other at least ninety (90) days prior written notice of non-renewal before the expiration of the then current term."

19.    Under Section 4 of the Agreement, titled "Charges", Colony agreed to pay 7thonline for its services "at the rates, fees and charges set forth below and in Exhibit B" to the Agreement.  Pursuant to Exhibit B of the Agreement, Colony agreed to pay portions of a per-annum Subscription Fee on a quarterly basis, which Subscription Fees were subject to an annual increase.  payment of a one-time Subscription Fee which started at $206,250 for 2018, and then increased in the intervening years thereafter.

20.    Following the end of the initial term of the Agreement in 2020, the Agreement automatically renewed four times, with the following Subscription Fees for each renewal: $440,178.75 for 2021; $501,930.00 for 2022; $516,987.88 for 2023; and $532,497.48 for 2024.

21.    Section 4 of the Agreement states that each 7thonline invoice

"must be paid by [Colony]…so that payment is received by 7thonline immediately from the date of the invoice (the "Due Date").  Any invoice not paid by the Due Date…will bear late payment fees at the lower of 1.5% per month or the highest rate legally permissible, until paid.  7thonline may immediately suspend or terminate the Services upon five (5) days prior written notice, if any invoice is not paid by its Due Date and [Colony] fails to cure this non-payment within this five (5) day period."

22.    Section 10 of the Agreement concerns "Warranties/Limitation of Liability." Section 10 states that the Services, Documentation and other material provided by 7thonline under the Agreement are provided "as is," with 7thonline disclaiming any and all other warranties.  The maximum liability under the Agreement for either party is not to exceed the greater of $1,000,000 or the actual amounts paid or payable by Colony to 7thonline.

23.    Section 15 of the Agreement, concerning "Termination", provides that if either Colony or 7thonline breached "any material term or condition of this Agreement," the other party is permitted to terminate this Agreement upon thirty (30) days prior written notice, "unless the Party cures this breach during the thirty (30) day period."  However, the notice and cure provisions set forth in Section 15 do not apply to "a failure to…pay an invoice, which [is] addressed under Section…4…."

24.    Section 17 of the Agreement, titled "Miscellaneous", states that the Agreement "shall be governed by and construed in accordance with the laws of the State of New York…[,]" and that "[a]ll disputes, differences, controversies, or claims arising out of or relating to this Agreement will first be mediated between officers of the Parties for no less than 30 days before any lawsuit is filed, except seeking preliminary injunctive relief."

25.    Finally, Section 17 also states:

"This Agreement, the exhibits thereto [including Exhibit 1 and Exhibit B], [and] any related statements of work[2] represent the complete and exclusive agreement between the parties with respect to the subject matter of this

---

[2] Statement(s) of Work are hereinafter referred to as "SOW" or "SOWs".

5

Agreement and supersedes all previous discussions, understandings, and writings between the parties with respect to such subject matter."

**The Parties' Relationship**

26.    Shortly after entering into the Agreement and pursuant thereto, the parties began to implement and enhance 7thonline's base system in accordance with Colony's specific requests and growing needs by executing, several Statements of Work ("SOW" or, collectively, "SOWs").

27.    Each and every SOW agreed to between the parties concerned bespoke additions or enhancements to the 7thonline system to be delivered by 7thonline at the request of Colony and, therefore, required separate consideration from Colony in the form of additional payments to 7thonline.

28.    Each and every SOW notes specifically, in its preamble, that the SOW "is subject to the terms and conditions set forth in the [Agreement]…[and] all of the terms and conditions of the Agreement are incorporated into [the] SOW by this reference."

29.    On February 7, 2019, 7thonline and Colony amended SOW CBR-004, titled "Enhancements for Integrated Planning & Execution," which had been entered into before the Agreement was executed, by a separate agreement called ""First Amendment to SOW CBR-004."[3]

30.    This SOW built upon prior engagements involving business process design, capability modelling, and aimed to start the initial phase of implementing the 7thonline Merchandise Financial Planning, Merchandise Assortment Planning, Open-To-Buy (OTB), and Global Reporting Solution.

31.    Under this SOW, 7thonline was responsible for creating functional specifications for all enhancements, submitting them for Colony's review, and incorporating

---

[3] *See* Exhibit 2.

feedback in a timely manner.  In case of failures, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.

32.    No unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed in connection with the enhancements agreed to in this SOW.

33.    7thonline performed all services agreed to under both the Agreement and these SOWs in 2018, without notice of any alleged breach under the Agreement during that annual period.

34.    On March 30, 2019, 7thonline and Colony signed SOW CBR-006[4], titled "Enhancements for Integrated Planning & Execution—Change of Scope 1."

35.    This SOW introduced additional requirements identified by Colony during end-to-end reviews to ensure the successful launch of Colony's Planning & Execution system. Enhancements included updates to the OTB Module (e.g., separating positive and negative inventory by pack/color and adding columns for AUR and inventory completion), the Assortment Planning Module (e.g., enabling AUR editing and adding drop ship attributes), and the PO Requisition Module (e.g., adding a Component Number column).

36.    Like the SOWs which preceded it, in case of failures, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.

37.    And, like the SOWs which preceded it, no unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed in connection with the enhancements agreed to in this SOW.

38.    On the same day, the parties also entered into SOW CBR-007, titled "Enhancements for Integrated Planning & Execution—Change of Scope 2."[5] This agreement addressed further requirements identified during the review process. Enhancements included

---

[4] *See* Exhibit 3.
[5] *See* Exhibit 4.

the addition of an Offer Seasons Filter across multiple modules, Price Type Planning in the Merchandise Planning Module, and filtering capabilities in the PO Requisition Module.

39. Like the SOWs which preceded it, in case of failures, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.

40. And, like the SOWs which preceded it, no unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed in connection with the enhancements agreed to in this SOW.

41. 7thonline performed all services agreed to under both the Agreement and these SOWs in 2019, without notice of any alleged breach under the Agreement during that annual period.

42. Between October and November 2020, 7thonline and Colony communicated concerning the conclusion of the end-to-end testing process and the transition to the next phase of the project.

43. At that time, 7thonline asserted that all open issues required for end-to-end testing were resolved and requested confirmation from Colony.

44. On November 3rd, 2020, Colony confirmed to 7thonline that 7thonline had met Colony's agreed specifications and that Colony had approved the completion of end-to-end testing.

45. Despite the completion of end-to end testing, Colony sought additional enhancements to its hosting environment, leading to SOWs CBR-008 through CBR-015.[6]

46. On December 21, 2020, the parties entered into multiple SOWs (CBR-008 through CBR-013).[7] These agreements aimed to enhance usability and improve system capabilities to better meet Colony's operational requirements.

---

[6] *See* Exhibits 5 - 12.
[7] *See* Exhibits 5 - 10.

47.    Like SOWs which preceded them, in case of failures, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.

48.    And, like the SOWs which preceded them, no unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed in connection with the enhancements agreed to in these SOWs.

49.    7thonline performed all services agreed to under both the Agreement and these SOWs in 2020, without notice of any alleged breach under the Agreement during this annual period.

50.    Section 3 of the Agreement provides that, after the Agreement's initial term ended on December 31, 2020, the Agreement was to be automatically renewed for additional one-year terms thereafter, "unless either party gives the other at least ninety (90) days prior written notice of non-renewal before the expiration of the then current term."

51.    As Colony failed to provide at least ninety (90) days prior written notice of non-renewal before the expiration of the initial term of the Agreement, the Agreement automatically renewed for 2021.

52.    7thonline performed all services agreed to under both the Agreement and its prior SOWs in 2021, without notice of any alleged breach under the Agreement during this annual period.

53.    As Colony failed to provide at least ninety (90) days prior written notice of non-renewal before the expiration of the 2021 renewal term of the Agreement, the Agreement automatically renewed for 2022.

54.    On May 12, 2022, the parties entered into SOW CBR-014,[8] titled "Calculate Assortment Plan Maintaining Planned Retail $," to address enhancements to the Create Assortment process identified during testing.

---

[8] *See* Exhibit 11.

55.    7thonline performed all services agreed to under the Agreement, this SOW and its prior SOWs in 2022, without notice of any alleged breach under the Agreement during this annual period.

56.    As Colony failed to provide at least ninety (90) days prior written notice of non-renewal before the expiration of the 2022 renewal term of the Agreement, the Agreement automatically renewed for 2023.

57.    On January 11, 2023, the parties entered into SOW CBR-015 [9] , titled "Additional Logic to Spread Assortment Plan to Offer," adding logic functionality for spreading assortment plan data.

58.    Like SOWs which preceded it, in case of failures, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.

59.    And, like the SOWs which preceded it, no unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed in connection with the enhancements agreed to in these SOWs.

60.    7thonline performed all services agreed to under both the Agreement, this SOW and its prior SOWs in 2023, without notice of any alleged breach under the Agreement during this annual period.

61.    Upon information and belief, on or about June 15, 2023, Colony expanded its catalog portfolio by acquiring certain assets of AmeriMark Interactive, LLC ("AmeriMark").

62.    Between August and December 2023, 7thonline engaged in discussions with Colony to address additional requirements which Colony had requested for enhanced business functionality incorporating AmeriMark into its database(s).

63.    In sum, 7thonline complied with all contractual obligations under the Agreement, provided ongoing hosting services without interruption, and promptly addressed

---

[9] *See* Exhibit 12.

further enhancements and additions to its system which were specifically requested by Colony in the SOWs.  Under each SOW, 7thonline was obligated to promptly remediate issues and resubmit the enhancements for re-testing.  And, under each SOW, no unremedied failure by 7thonline was asserted, nor was any breach of the Agreement claimed.

64.     For the years 2018, 2019, 2020, 2021, 2022 and 2023, Colony paid 7thonline its agreed-to, annual Subscription Fee with no issue.

**Colony Stops All Subscription Fee Payments to 7thonline**

65.     Colony then failed to provide at least ninety (90) days prior written notice of non-renewal before the expiration of 2023 renewal term of the Agreement, and the Agreement automatically renewed for 2024.

66.     On December 26, 2023, 7thonline issued Invoice 11797 to Colony[10], which sought $133,124.37 for the Q1 portion of the Subscription Fee under the 2024 renewal of the Agreement.  Yet, Colony failed to make this payment.

67.     On January 25, 2024, 7thonline followed up for payment of the Q1 installment of the 2024 Subscription Fee.

68.     However, on February 7, 2024, citing the need for further discussions between the parties, Colony informed 7thonline that it had decided to "hold" the current quarter's payment,

69.     Colony's "holding" of payment is an act which finds no basis in the Agreement.

70.     To date, despite the Colony's undisputed renewal for the 2024 annual period, Colony has failed to pay 7thonline any portion of the agreed-to Subscription Fee for that year.

**Colony Manufactures An Alleged Breach by 7thonline Under the Agreement**

71.     Recognizing that it had failed to non-renew the Agreement for 2024 and was required to make Subscription Fee payments to 7thonline for that year, Colony instead sent a

---

[10] *See* Exhibit 13.

letter to 7thonline, dated April 24, 2024 (the "April Letter"), in which it advised, for the first time, that it was notifying 7thonline that it "breached" the Agreement by "fail[ing] to perform or provide any of the Services contemplated by the Agreement."[11]

72.     Pursuant to the Agreement's notice and breach provisions, 7thonline began immediately discussing with Colony how it could best "cure" its alleged "material breach", while reserving all rights with respect to admitting that a breach had actually occurred.  The parties' discussions concerning a "cure" of 7thonline's alleged breach with 7thonline continued through the middle of June 2024, well beyond the 30-day period to "cure" provided for under the Agreement.

73.     On June 28, 2024 Colony sent a letter to 7thonline advising that the Agreement's cure period had "expired" and demanded a mediation pursuant to the Agreement (the "June Letter").[12]  Colony did so without permitting 7thonline with the opportunity to "cure" its alleged breach.

74.     In response, 7thonline advised that it had not yet had the opportunity to "cure," and disputed the alleged breach in August 2024, again seeking the opportunity to cure.

75.     In September 2024, the parties met virtually to discuss 7thonline's potential cure of its alleged breach under the Agreement. However, Colony would not agree to permit 7thonline to "cure" its alleged breach.

76.     To date, 7thonline has not been permitted an opportunity to "cure" its alleged breach.

77.     On September 23, 2024, for the first time in their relationship of nearly six (6) years, Colony sent a non-renewal letter to 7thonline for the 2025 annual period.[13]

---

[11] *See* Exhibit 14.
[12] *See* Exhibit 15.
[13] *See* Exhibit 16.

78.     Despite the April Letter and September notice of non-renewal for the 2025 annual period, 7thonline complied with all contractual obligations under the Agreement, provided ongoing hosting services without interruption for the 2024 annual period.

### The Parties' Mediation and Aftermath

79.     Pursuant to the Agreement, the parties mediated their dispute(s) on February 21, 2025, which did not result in a resolution.

80.     Section 17 of the Agreement, titled "Miscellaneous", states that the Agreement "shall be governed by and construed in accordance with the laws of the State of New York…[,]" and that "[a]ll disputes, differences, controversies, or claims arising out of or relating to this Agreement will first be mediated between officers of the Parties for no less than 30 days before any lawsuit is filed, except seeking preliminary injunctive relief."

81.     In violation of Section 17 of the Agreement, which called for a cooling down period of "no less than 30 days before any lawsuit is filed", Colony improperly filed a lawsuit in the Western District of Wisconsin immediately after the mediation concluded.

82.     On the other hand, 7thonline complied with Section 17's cooling down period and now timely files the instant action against Colony.

### AS AND FOR THE FIRST CAUSE OF ACTION

### Breach of Contract Against Colony

83.     7thonline incorporates Paragraphs 1 through 82 of the Complaint as if fully set forth at length herein.

84.     7thonline and Colony entered into the Agreement, an enforceable contract.

85.     As set forth *infra*, 7thonline has fully performed its contractual obligations under the Agreement.

86.     Colony failed to provide written notice of non-renewal for 2024 at least ninety (90) days before the expiration of the then-current term of the Agreement, pursuant to Section 3 of the Agreement; and

87.     As a result of its failure to non-renew the Agreement, Colony was required to pay a Subscription Fee to 7thonline of $532,497.48, pursuant to Section 4 of the Agreement.

88.     To date, Colony has failed to make this payment.

89.     As a direct and proximate result of Colony's breach of the Agreement, 7thonline has sustained and will continue to sustain damages in an amount not less than $532,497.48, plus applicable interest under the Agreement and other applicable fees and costs.

## AS AND FOR THE SECOND CAUSE OF ACTION

### Declaratory Judgment Against Colony

90.     7thonline incorporates Paragraphs 1 through 89 of the Complaint as if fully set forth at length herein.

91.     The Agreement states that "[a]ll disputes, differences, controversies, or claims arising out of or relating to this Agreement will first be mediated between officers of the Parties for no less than 30 days before any lawsuit is filed, except seeking preliminary injunctive relief."

92.     The mediation was held on Friday, February 21, 2025, but did not result in a resolution of the dispute.  As such, both parties were required by the Agreement to wait "no less than 30 days" to file a lawsuit.

93.     However, Colony *immediately and improperly* filed a lawsuit captioned *Colony Brands, Inc. v. 7thonline, Inc.*, Case No. 25-cv-130, in the United States District Court for the Western District of Wisconsin, alleging 7thonline's breach of the Agreement (the "Anticipatory Wisconsin Action").

14

94.     An actual and justiciable controversy has arisen and currently exists between 7thonline and Colony regarding the parties' obligations under the Agreement in connection with the instant action and the Anticipatory Wisconsin Action.

95.     Colony's improper Anticipatory Wisconsin Action does not bar this Court from hearing this case under the so-called "first filed rule".

96.     Special circumstances justifying an exception to the "first filed rule" exist where the first suit constitutes an improper anticipatory filing or was motivated solely by forum shopping.

97.     Colony's immediate filing of the Anticipatory Wisconsin Action was in open violation of the Agreement's unambiguous "no less than 30 days" cooling off period and was thus an attempt at forum shopping to avoid this Court.

98.     It was violative of the Agreement for Colony to launch a "pre-emptive strike" by racing to the courthouse in its preferred forum before 7thonline, which complied with the Agreement in all material respects, had a chance to file the instant action.

99.     The Anticipatory Wisconsin Action was also filed based upon an apparent threat of litigation by 7thonline, as such threat can arise where, as was the case here, the parties had been engaged in mediation which ceased.

100.    7thonline has moved to dismiss the Anticipatory Wisconsin Action on this basis, among others, in that Court.

101.    Therefore, 7thonline seeks an Order from this Court that Colony, through its Anticipatory Wisconsin Action, does not enjoy any presumption in its favor under the "first filed rule" and that, instead, 7thonline's instant Complaint is instead entitled to this presumption.

## PRAYER FOR RELIEF

WHEREFORE, 7thonline request that this Court enter judgment against Colony:

a. On its First Cause of Action, in an amount of not less than $532,497.48, plus applicable interest under the Agreement and other applicable fees and costs;

b. On its Second Cause of Action, declaring that, under the terms of the Agreement, this action is the "first-filed" action and not the Anticipatory Wisconsin Action filed by Colony; and

c. Granting such other and further relief as this Court deems just and proper

Dated: New York, New York
March 24, 2025

KENNEDYS CMK LLP

/s/ *Jason L. Ederer*
Jason L. Ederer
22 Vanderbilt Avenue
Suite 2400
New York, New York 10017
(212) 252-0004
jason.ederer@kennedyslaw.com
*Attorneys for Plaintiffs*
*7thonline, Inc.*